UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :

     - against -     :

GIOVANNI CASTELLANOS,                    :

       Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION
& ORDER</u>
13-cr-40-1(DC)

APPEARANCES:   DAMIAN WILLIAMS, Esq.
        United States Attorney for the
        Southern District of New York
        By:  Chelsea L. Scism, Esq.
          Assistant United States Attorney
        One Saint Andrew's Plaza
        New York, NY  10007

        GIOVANNI CASTELLANOS
        Defendant *Pro Se*
        FCI Ray Brook
        PO Box 900
        Ray Brook, NY  12977-0900

CHIN, Circuit Judge:

    On June 9, 2014, defendant Giovanni Castellanos pleaded guilty to one

count of conspiracy to commit robbery in violation of 18 U.S.C. § 1951 ("Count One")

and one count of possession of a firearm during and in relation to a crime of violence in

violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Two").  *See* Dkt. 79 at 7, 18.  On October

30, 2014, I sentenced Castellanos principally to 240 months' imprisonment on Count

One and 60 months' imprisonment on Count Two, to run consecutively. *See* Dkt. 90 at 10. On December 10, 2019, upon considering Castellanos's second motion for relief pursuant to 28 U.S.C. § 2255, I vacated his conviction on Count Two in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). *See* Dkt. 110. I also entered an amended judgment reflecting a conviction on Count One only and a revised sentence of 240 months' imprisonment. *See* Dkt. 111.

On May 8, 2023, Mr. Castellanos, proceeding *pro se*, moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act"). *See* Dkt. 144 ("Motion"). His motion includes a request for the appointment of counsel. *Id*. at 3. The Government opposed Castellanos's motion on July 6, 2023. Dkt. 151.

For the reasons set out below, the motion is DENIED.

## BACKGROUND

The underlying facts are set forth in prior decisions of this Court. *See* Dkt. 102 at 2-3; *United States v. Castellanos*, No. 13-cr-40, 2020 WL 6269278, at *1 (S.D.N.Y. Oct. 26, 2020). Accordingly, I repeat only the most relevant facts below.

## I.   Castellanos's Crimes, Plea Agreement, and Sentencing

In 2003, Castellanos was involved in a drug dealing crew in Manhattan that sold sham narcotics to drug dealers. *See* Presentence Investigation Report ("PSR") ¶ 7. The members of the crew included John Jackson, Jorge Arias, and Franklin

Fernandez.  During a typical transaction, members would target dealers with out-of-state license plates seeking to buy large quantities of narcotics.  The members would facilitate a sale by providing a sample of genuine narcotics, but upon receiving payment for the transaction, they would compete the sale with sham narcotics.  *Id.*

On May 10, 2003, Jackson attempted to sell fake ecstasy to Souleymane Kane and another individual in Manhattan.  PSR ¶ 8; Dkt. 151 at 2.  After Kane and his partner indicated that they would want to see the balance of the narcotics before purchasing, Castellanos and the other members of the crew agreed to rob them if they refused to proceed with the transaction.  PSR ¶ 9.  Jackson brought Kane and his partner to the lobby of a nearby building and Fernandez, Arias, and Castellanos drove to the scene.   As they were driving, Castellanos took out and loaded a gun.  PSR ¶¶ 8-10; Dkt. 151 at 2.

When Fernandez, Arias, and Castellanos arrived, Kane and his partner refused to proceed with the transaction.  During the ensuing attempted robbery, Castellanos shot and killed Kane.  PSR ¶¶ 8-10.

On June 9, 2014, Castellanos pleaded guilty to a two-count superseding information, pursuant to a plea agreement.  Dkt. 79 at 7-18.  Count One charged conspiracy to commit robbery in violation of 18 U.S.C. § 1951, and Count Two charged possession of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i).  *Id*.  Castellanos had initially been indicted on one count of

conspiracy to commit robbery resulting in death, in violation of 18 U.S.C. §§ 924(j) and

(2).  Dkt. 2; Dkt. 92 at 2-3.

On October 30, 2014, I sentenced Castellanos to a term of imprisonment of

300 months, followed by three years of supervised release.  *See* Dkt. 98 at 10.  The

original indictment was dismissed at sentencing.  *Id*. at 11-12.  Castellanos did not

appeal his conviction.

## II.     Post-Conviction Proceedings

### A.     Section 2255 Motions

On April 17, 2015, Castellanos moved *pro se* to vacate his sentence

pursuant to 28 U.S.C. § 2255.  Dkt. 100.  I denied his motion on July 30, 2015.  Dkt. 102.

On November 26, 2019, represented by counsel, Castellanos again moved

pursuant to 28 U.S.C. § 2255 to vacate his conviction on Count Two and its related

sentence of 60 months' imprisonment, in light of *Davis* and *Barrett*.  *See* Dkt. 109; *Davis*,

139 S. Ct. at 2336; *Barrett*, 937 F.3d at 127.  I granted the motion on December 10, 2019,

and entered an amended judgment reflecting a conviction on Count One only and a

sentence of 240 months' imprisonment.  *See* Dkt. 111.

On April 2, 2020, Castellanos moved for the third time to vacate his

sentence pursuant to 28 U.S.C. § 2255.  *See* Dkt. 112.  I denied his motion on October 26,

2020.  Dkt. 116.

B.      **Motion for Compassionate Release**

On April 21, 2023, Castellanos filed a request with the Warden at the

Federal Correctional Institution at Ray Brook, New York ("FCI Ray Brook) to reduce his

sentence.  Motion at 28. (Exh. A)  On April 27, 2023, the Warden denied Castellanos's

request.  *Id.* at 29.  On May 8, 2023, Castellanos filed the instant *pro se* motion for

compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to reduce his sentence to

time served.  Motion at 2-3.

Castellanos is currently 50 years old and has been incarcerated for 10

years.  *See* Motion at 6, 50.  He is currently incarcerated at FCI Ray Brook and his

projected release date is July 25, 2030.  Dkt. 151 at 3.

## DISCUSSION

I.      **Applicable Law**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a

court may "reduce a previously imposed term of imprisonment upon finding that

'extraordinary and compelling reasons warrant such a reduction.'"  *United States v. Keitt*,

21 F.4th 67, 71 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  Three requirements

must be satisfied before a court may grant such relief.  *Id*.  First, absent a waiver, a

defendant must exhaust remedies by requesting such relief from prison officials.  *Id.*; *see*

*also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  Second, the court must

"consider[] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are

applicable."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 17 F.4th 371, 374-75

(2d Cir. 2020) (per curiam).  Finally, "the inmate must demonstrate that his proffered

circumstances are indeed 'extraordinary and compelling' such that, in light of the[]

§ 3553(a) factors, a sentence reduction is justified."  *Keitt*, 21 F.4th at 71.

       The First Step Act "freed district courts to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before

them . . . ."  *Brooker*, 976 F.3d at 237.  Indeed, "a district court's discretion in this area -- as

in all sentencing matters -- is broad."  *Id*.  "The only statutory limit on what a court may

consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be

considered an extraordinary and compelling reason.'"  *Id.* at 237-38 (quoting 28 U.S.C.

§ 994(t)).  Rehabilitation can, however, "interact" with other factors to constitute

extraordinary and compelling reasons to reduce a sentence.  *Id*. at 238; *see also United

States v. Millan*, No. 91-cr-685, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020).

## II.    <u>Application</u>

       As a threshold matter, it is undisputed that Castellanos has exhausted his

administrative remedies.  Motion at 29; *see* 18 U.S.C. § 3582(c)(1)(A).  I therefore first

consider if there exist extraordinary and compelling reasons permitting a reduced

sentence.  I then consider whether a sentence reduction is warranted under the factors

set forth in 18 U.S.C. § 3553(a) and, if so, to what extent.

A.      **Extraordinary and Compelling Circumstances**

Section 3582(c)(1)(A) does not provide a definition of "extraordinary and compelling reasons" that merit a sentence reduction.  *See United States v. Torres*, 464 F. Supp. 3d 651, 659 (S.D.N.Y. 2020).  Instead, district courts have broad discretion to consider factors beyond those enumerated in the Sentencing Guidelines.  *See Brooker*, 976 F.3d at 237; *United States v. Torres-Nunez*, No. 87-cr-419, 2021 WL 1668024, at *3 (S.D.N.Y. 2021).

Castellanos has proffered several reasons why he deserves a reduced sentence, including his health conditions, rehabilitation efforts, and the length of his sentence.  Taking them together, I am not persuaded that Castellanos has made a showing of extraordinary and compelling reasons sufficient to permit a reduction of his sentence.

1.      *Castellanos's Health, Age, and the COVID-19 Pandemic*

First, Castellanos contends that his chronic kidney disease ("CKD") and the prison's inadequate health facilities place him at a high risk of death from COVID-19 or other viral diseases.  Motion at 14, 46.  According to Castellanos, the fact that vaccination against COVID-19 is available to him and that he is fully vaccinated do not diminish this risk.  *Id.* at 15.  Castellanos also claims that he struggles with PTSD and has been deprived of the appropriate treatment at FCI Ray Brook.  *Id.* at 17-19.  In response, the Government argues that Castellanos's generalized fear of COVID-19,

taken together with his CKD treatment and his vaccination status, does not constitute an extraordinary and compelling reason for compassionate release.  *See* Dkt. 151 at 5-8.

Because the Government concedes that Castellanos's medical records corroborate his diagnosis of CKD, Dkt. 151 at 6, I credit Castellanos's claim that his CKD increases his chances of contracting a serious case of COVID-19.[1]  Yet this vulnerability is mitigated by the fact that Castellanos -- like most inmates at FCI Ray Brook -- is fully vaccinated against COVID-19, which reduces his risk of becoming seriously ill or hospitalized.  *See United States v. Lang*, No. 02-cr-1444, 2022 WL 17819518, at *3 (S.D.N.Y. Dec. 20, 2022) (holding that an inmate's vaccination status weighed against granting compassionate release, even where he suffered from a comorbidity for COVID-19).  Although Castellanos attaches an affidavit from a medical doctor averring that incarcerated individuals are at an increased risk of contracting COVID-19, the affidavit was executed in March 2020, long before COVID-19 vaccines were developed and readily available.  *See* Motion at 34-42.

Moreover, Castellanos does not contend that his CKD is particularly severe or advanced, and his medical records indicate that he is receiving treatment for the disease at FCI Ray Brook.  *See* Dkt. 151 at 6; *United States v. Olivieri*, No. S2-18-cr-316, 2023 WL 2366859, at *4 (S.D.N.Y. Mar. 6, 2023) (holding, *inter alia*, that inmate's

---

[1]	*See COVID-19: People at Increased Risk -- People with Certain Medical Conditions,* Center for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 15, 2023).

dementia diagnosis did not constitute an extraordinary and compelling reason for his release where there were no medical records indicating the severity of the diagnosis and the records available were "outdated and contradictory").  Besides generalized assertions that the medical facilities at FCI Ray Brook are inadequate and that prison officials exhibit "plain malfeas[a]nce" towards inmates' medical needs, Dkt. 144 at 14, Castellanos has failed to show with any particularity how the confluence of his medical conditions[2] and the prison's ability to provide medical treatment places him at particular risk of severe disease or death such that his release is warranted.  *See United States v. Phillibert*, 557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021) ("The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c).")

Based on his medical records, I am not persuaded that Castellanos's medical conditions constitute an extraordinary and compelling circumstance that warrants release.

### 2.    *Castellanos's Rehabilitation*

Second, Castellanos contends that he has done "everything in his power" while incarcerated to rehabilitate himself and that his risk of recidivism, as reflected by his PATTERN Score Risk Assessment, is low.  Motion at 7, 24, 45.  Castellanos's

---

[2]      As to Castellanos's contention that FCI Ray Brook's facilities are inadequate to treat his PTSD, his medical records do not reflect a diagnosis of PTSD.

educational endeavors are indeed noteworthy and deserving of particular praise.  While

incarcerated, he has obtained his GED, completed a significant number of additional

educational courses, and is currently enrolled in a college associate's degree program.

*Id.* at 31-33.  His consistent enrollment in educational courses demonstrates his

admirable dedication to self-improvement through education.

      Yet, while commendable, Castellanos's efforts at rehabilitation do not

merit the granting of his motion.  Contrary to Castellanos's assertions, his records reflect

a higher risk of recidivism.  Indeed, his PATTERN Score Risk Assessment level is

medium -- the second-highest recidivism score -- and his "violent level" is likewise

medium.  *See id.* at 45.  Moreover, Castellanos's disciplinary records indicate that he has

committed seven infractions during ten years of incarceration, including three charges

of possessing drugs or alcohol.  *See* Dkt. 151-2.[3]  These possession charges are of

particular concern, given that Castellanos committed his original crimes during a sham

narcotics transaction.

      Therefore, despite Castellanos's commendable educational

accomplishments, I find that his rehabilitation efforts do not constitute an

"extraordinary or compelling" circumstance that warrants relief.  Moreover, even if I

were to find that Castellanos has significantly rehabilitated himself while in

---

[3]     The remainder of Castellanos's disciplinary incidents involve disruptive conduct, possessing a non-hazardous tool, and making holes in his jumpsuit.  Dkt. 151-2 at 2-4.

prison,"[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason" to warrant release.  28 U.S.C. § 994(t)).

### 3.      *The Length of Castellanos's Sentence*

Finally, Castellanos argues that his sentence is "extremely lengthy." Motion at 23.  He notes that multiple district courts have granted compassionate relief to defendants with life sentences and that his sentence is "far more severe."  Motion at 21-22.

This argument is without merit.  Castellanos's assertion obscures the fact that even though he shot and killed Kane during the attempted robbery, he pled guilty to two lesser offenses.  As I noted during the sentencing hearing, Castellanos committed but was not ultimately charged for a crime -- "perhaps the worst crime that there can be" -- that "ordinarily carries a life sentence."  Dkt. 98 at 10.  Thus, Castellanos's sentence of 240 months' imprisonment for one count of conspiracy to commit robbery was appropriate at the time of sentencing -- and remains so today.

### B.      The Section 3553(a) Factors

Turning to the Section 3553(a) factors, I conclude that they also weigh against granting Castellanos's motion.

Before a court can reduce a defendant's sentence, it must "consider[] the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see also Jones*, 17 F.4th at 374-75.  Those factors include, *inter alia*, the

nature and circumstances of the offense, the defendant's history and characteristics, and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(1)-(2).  The statute also provides that courts must "'impose a sentence sufficient, but not greater than necessary,' . . . to facilitate retribution, deterrence, incapacitation, and rehabilitation."  *United States v. Phillips*, 469 F. Supp. 3d 180, 183 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3553(a)).

Castellanos's sentence remains appropriate given the nature and circumstances of his offense and the need for the sentence imposed.  Castellanos was not only involved in an attempted robbery pursuant to a narcotics transaction, but he brought the gun to the robbery, loaded it, and used it to shoot and kill Kane.  He avoided the possibility of a life sentence by deciding to plead guilty to two lesser offenses.  The statutory maximum sentence I imposed on Castellanos for conspiracy to commit robbery -- of which he has served approximately half -- is a reasonable sentence that reflects the seriousness of the offense and provides just punishment.  Moreover, granting a sentence reduction would undermine the goals of deterrence, as mandated by the statute.  *See* 18 U.S.C. § 3553(a).

Upon weighing the Section 3553(a) factors, I conclude that a sentence of 240 months' imprisonment appropriately reflects respect for the law and the seriousness of Castellanos's offense.

## <u>CONCLUSION</u>

For the reasons set forth above, Castellanos has failed to show that compassionate release is warranted.  His motion for compassionate release is hereby DENIED.

The Clerk of the Court is directed to mail a copy of this order to Castellanos at his last address of record.

SO ORDERED.

Dated:      New York, New York
            August 18, 2023

                                    _____s/DC_____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting by Designation